Garland, J.
The plaintiff alleges, that in the month of June, 1841, he entered into a contract with McGilway, to build two dwelling houses in Dauphine street, of a certain height and dimensions, which were to be completed in a workmanlike manner, on or before the 15th of October in the same year; for which he was to pay the sum of $15,000, in different instalments. The *193 first, of $3000, he avers that he has paid. The others, he alleges he is not liable to pay, as the contract has not been complied with, and the said McGilway is unable to perform it, and has neglected or refused to do so. He avers, that he has called upon him to give up the contract, so that he may employ some other person to complete the houses, but that McGilway refuses either to do so, or to complete the undertaking. He, therefore, prays, that a writ may be issued, to put him in possession of the premises ; that the contract may be annulled; and that he may recover $10,000 damages. He also prays, that as John Walker and Lawrence Gurvey are the sureties of McGilway, for the faithful compliance with his contract, they may be made parties, and that he may have judgment against them. He further avers, that it has been supposed that he owes the second instalment of $2800, which is not true ; and that he has in consequence been sued, in conjunction with McGilway, for materials furnished him by Newton Richards, and Forstall, Roman & Go. He therefore prays, that they also may be made parties, and their claims, as against him, dismissed.
The defendant, McGilway, after a general denial of such allegations as are not specially admitted, answers, that he did enter into the contract annexed to the petition, and was going on to execute it, and had made considerable progress in so doing, when he was interrupted by the plaintiff, who ordered him and his workmen away from the premises, threatening to imprison them, and endeavored to take possession thereof, and finally obtained an injunction to arrest his proceedings, which he got dissolved after much trouble and delay; and that he otherwise interrupted him in his efforts to complete the contract. He further avers, that by the conduct of the plaintiff, and his misrepresentations as to the unwillingness and inability of the defendant to comply with the contract, he (defendant) has suffered heavy damages, by loss of credit, and has also lost a large amount of the profits he expected to make. He further alleges, that he has done a great deal more work on the buildings than the plaintiff has paid him for, in consequence of all which, he is entitled to claim of him the sum of $15,000, which he does by a demand in reconvention.
The two sureties of the defendant answered by a general de *194 nial; and claim to be discharged in consequence of the course pursued by the plaintiff towards McGilway, whose grounds of defence they adopt. Roman, Forstall & Co. aver, that they have a judgment against McGilway for materials and supplies furnished to enable him to construct the buildings, which cannot be affected or annulled by this proceeding. The other defendant, Richards, filed no answer at all.
The building contract was given in evidence. It details specially the work to be executed, and states, that the undertaker is to furnish the materials of every description, do all the work, and have the whole establishment completed on or before the 15th of October, 1841, ready for delivery ; and if not then ready, McGilway stipulates to pay a rent of $200 per mouth, until the houses are completed, and also binds himself in a penalty of $10,000, to comply with all his obligations. There are many stipulations not necessary to mention, but the houses were to have a depth of forly-one feet in the clear, and the two first stories to be thirteen feet in height between the floor and joists : the price to be $15,000, payable in several instalments; and there is a clause which stipulates, that in case of difficulty between the parties, or if from any cause the progress of the buildings be threatened with delay, the plaintiff shall have the faculty of taking immediate possession of them and continuing the work, without prejudice to the eventual rights of the parties.
The parol evidence shows, that McGilway commenced the work and progressed with it until some time in the month of July, 1841, when he became somewhat irregular in the prosecution of it, so much so, as to attract the notice of different individuals and of the plaintiff, who began to be apprehensive, that the work would not be finished in October, and that he should thereby lose the opportunity of renting advantageously, until the commencement of another season. He, therefore, on the 24th of July, 1841, wrote to McGilway, informing him, that for some four or five days past, the work upon the buildings was nearly suspended, and of the consequences that would result from the houses not being ready to receive tenants in October ; he calls his attention to the necessity of an immediate prosecution of the work, and to the clause in the contract which authorized the *195 plaintiff to take possession, and continue the work. He states, that he is not desirous of executing this clause, but that, if the suspension continues much longer, he will be compelled to do so. What answer was given to this letter is not shown ; but upon the 7th of August following, the plaintiff again wrote, saying, that notwithstanding his urgent and repeated remonstrances against delay, nearly three weeks had elapsed since any thing of consequence had been done. He repeats what was said in the first letter, and adds, that it was then almost physically impossible to complete the houses within the time mentioned ; he, therefore, informs him of his intention to take immediate possession of the buildings, to seek another contractor, and to hold him answerable for all extra cost, expenses, and damages. He also informs- him, that at an early day, two master builders will visit the premises to measure the work done, and assess its valne. The sureties were also notified of this intention and proceeding. Tt appears that McGilway resisted the taking possession of the houses by the plaintiff; and that, on the 25th of the month last mentioned, the plaintiff again wrote, remonstrating against the delay, and telling the contractor, that he was unable to complete his contract, and that the suspension of operations still continued ; wherefore he again demanded the possession of his property, and warned him of the consequences. He also proceeded to point out several variations from the contract, to wit, that the houses were only thirty-eight feet deep instead of forty-one; and that one story was only twelve feet pitch or height, instead of thirteen feet; and also, that some of the materials were not of the quality stipulated. The contractor still refused to give up the houses, and did some work on them ; when, on the 18th of October, the term having elapsed entirely, the plaintiff again demanded possession of his property. It was still withheld, and he did not get it until the 11th of November, when he was put in possession by the Sheriff, under an order of court. It is further shown, that about the time when McGilway entered into this contract, and subsequently, he was much in want of money, and that several persons withdrew the credit they had formerly given him, and refused to furnish materials, or to do work, unless security was given. The first instalment of $3000 was paid on the 10th of *196 July, 1841, and it is not shown that the work was sufficiently advanced before the difficulties commenced, to entitle the contractor to another payment. It also appears, that the plaintiff, in August, after his first notice to McGilway, engaged another undertaker to finish the work, but that he could not do so, as McGilway kept possession.
On the part of the contractor it is proved, that he commenced the work with considerable vigor, and prosecuted it for some time in a satisfactory manner. Some of the witnesses say, that if he had been paid the second instalment of $2800, he could have completed the work in time, and have made money, some say as much as $3000. On the other side it is proved, that he would have lost largely by the contract, under any circumstances. When the plaintiff first went to take possession, some persons were at work on the houses, who went away in consequence of his threats of putting them in prison ; and afterwards, although work was resumed, it does not appear to have progressed rapidly. McGilway continued to be embarrassed, and his situation at the time of the trial was far from being prosperous. When the plaintiff1 got possession of the houses in November, it is proved that the work which had been done by the contractor was worth $5090; and there were in his shop, flooring plank, door and window frames, doors, window sashes, and other joiners’ work of the value of $1000 ; but it is not shown that the plaintiff ever used it, or that these things were ever tendered or delivered to him.
The Judge allowed the $5090 for the work on the houses, as on a quantum, meruit. He deducted from it the $3000 paid ; he also deducted $173 33 for twenty-six days rent, or demurrage, at the rate of $200 per month, and $300 for a partition wall in an adjoining house; and allowed $1000 for the joiners’ work, consisting of doors, sashes, door and window frames, and flooring, on hand at the defendant McGilway’s shop. This left a balance of $1616 67, for which McGilway had judgment against the plaintiff, on his demand in reconvention; from which the plaintiff has appealed.
We have attentively examined the mass of testimony in this case, and cannot agree with the District Judge in his conclusions. *197 It is not disputed that the sum of $5090 is correct, nor that $3000 has been paid, nor that McGilway is bound to pay $300 for the partition wall. The sum of $1000, and that of $173 33, are contested. The plaintiff avers, that he ought not to pay the first named sum, because he never had the materials delivered or tendered to him, for which it is charged ; and because no order is made that they shall be delivered in case it is paid; and further, that it was McGilway’s fault and negligence which prevented them from being used. We think this objection well founded, and that the court erred in allowing it. McGilway has not, in our opinion, proved that he was sufficiently diligent in the discharge of his contract. Upon him, therefore, the loss of the materials must fall, if they have been really lost. He had the buildings in his charge and possession for nearly a month longer than the contract stipulated ; and when taken from him, they were not half finished, and it was necessary to engage other workmen to complete them, which cost the plaintiff about $11,600 The new contractor made no Use of these materials, which were not on the premises, but in McGilway’s work-shop; and it is not shown that he made their existence known, at the time the estimate was made of the value of the work and materials on .the lots in Dauphine street. If he had, it is probable they would have been included in the statement made up by the two master builders. The value of these materials and work is stated in very general terms by the witnesses. They do not pretend to have made any measurements or calculations, but guess at the value of the flooring plank in one place, and the door and window frames, window sashes, &c. in the shop at another place. We cannot, upon evidence so vague and general, condemn the plaintiff to pay for materials and work which it is not pretended that he ever had the benefit of, or used in any way.
Under all the circumstances of the cáse, we do not feel disposed to increase the amount for the rent or demurrage allowed by the District Judge, believing that, from the testimony, he has done substantial justice between the parties.
The judgment of the District Court is annulled and reversed, and it is ordered and decreed, that the defendant, George McGilway, on his demand in reconvention, do recover of the plaintiff, *198 John Parker, the sum of sixteen hundred and sixteen dollars and sixty-seven cents, with interest at the rate of five' per cent, per annum, from the 25th day of November,-1841, until paid, with the privilege and lien granted by law to undertakers and workmen, on the buildings described in the petition and contract annexed thereto; upon the payment of which sum and interest, the contract between the parties is to be discharged and annulled ; and in all other respects the several demands and claims set up by the parties are rejected. The plaintiff, Parker, paying the costs in the court below ; those of the appeal to be paid by the defendant and appel lee.